Andrew V. Kenny, Appellant, v. C. Vernon Thompson, Appellee.

Gen. No. 44,342.

Opinion filed June 21, 1949. Released for publication October 3, 1949.

NEWTON, WILHELM & KENNY, of Chicago, for appellant; JAMES V. KENNY, GEORGE D. SULLIVAN, and EVERETT JENNINGS, all of Chicago, of counsel.

DALEY & LYNCH, of Chicago, for appellee; CHARLES D. SNEWIND and JOSEPH A. POWERS, both of Chicago, of counsel.

ISHAM, LINCOLN & BEALE, of Chicago, Amicus Curiae; JUSTIN A. STANLEY, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff filed an action in forcible detainer in which he claimed that he was entitled to the possession of the third floor apartment of 6857 South Paxton avenue, Chicago, Illinois, and that defendant was unlawfully withholding possession of the premises from

plaintiff. In a trial before the court the trial court found that defendant was not guilty of unlawfully withholding from plaintiff the premises in question and entered judgment upon the finding. Plaintiff appeals.

The Paxton Arms Building Corporation owns certain real estate at 6857 South Paxton avenue, Chicago, including a twenty-two year old cooperative apartment building located thereon. Dr. Arthur F. Bokman held a proprietary lease from said Building Corporation to the third floor apartment in said building and also owned thirty-eight shares of stock in said Building Corporation. About eight or nine years ago Dr. Bokman subleased the apartment to C. Vernon Thompson, defendant, and upon a month-to-month tenancy the latter has continued to occupy the apartment since that time. On July 31, 1947, Dr. Bokman sold his said stock and his said proprietary lease to plaintiff. Defendant is a lawyer and is serving as an assistant State's attorney. Plaintiff is a life insurance supervisor. He is a veteran of World War II and was in the service for thirty-eight months, nineteen months of which were spent overseas. As he was about to be married he desired the apartment for his own use, and, therefore, he caused a thirty-day notice of termination of tenancy to be served upon defendant, and after the thirty-day period had expired, upon defendant's refusal to vacate, plaintiff commenced the instant suit under the Forcible Entry and Detainer Act. While plaintiff was being examined during the hearing of the instant cause the following occurred: "The Court: As I understand it from the statement that you [plaintiff's counsel] made and the statement that the counsel made on the defense the only issue here is whether or not this plaintiff is the owner of these premises and has the right to evict this tenant when he desires the occupancy for himself. *Mr. Lynch [attorney for defendant]: I believe that is correct.*

Mr. Kenny [attorney for plaintiff] : *Then I have no further questions. . . .* The Court: It seems to me that we are going rather far afield. The only question before us here is whether or not this plaintiff is the owner of this property and by being the owner and desiring the possession for himself is entitled to possession. . . . *It is just a question of law.*" Defendant contended during the trial and now contends that "the plaintiff, as a shareholder in and as a lessee from a cooperative housing corporation, cannot maintain an action in forcible detainer for the reason that he is not a landlord within the meaning and intent of the Federal Housing and Rent Act of 1947." The trial court sustained the position of defendant that the provisions of the Housing and Rent Act of 1947 prohibited plaintiff from obtaining possession of the apartment and that plaintiff did not possess sufficient title to the apartment to enable him to sustain his action.

The record shows that the sole question before us is, Was the trial court justified in holding that plaintiff was precluded from obtaining possession of the apartment in question solely by reason of the prohibitions of the Federal Housing and Rent Act of 1947? Counsel for both parties agree that this is the first time that question has been presented to a court of review in this State. However, the exact question now before us was determined by the Court of Appeals of Maryland in *Tudor Arms Apartments v. Shaffer,* 62 A. 2d 346, opinion filed November 10, 1948. The reasoning of the court in that case, in our judgment, is so sound that we feel justified in quoting from the opinion at length (pp. 347–350) :

"This appeal is from a declaratory decree of the Circuit Court No. 2 of Baltimore City, dated February 3, 1948, in a case involving the rights of tenants of the Tudor Arms Apartments, Inc., to resist eviction under the provisions of the Federal Housing and Rent

Act of 1947, 50 U. S. C. A. Appendix, Sec. 1881 et seq.

"The apartment house in question, located on the southwest corner of University Parkway and Tudor Arms Avenue in Baltimore City, contains 48 separate apartment units. In December, 1946, it was sold to certain parties who decided to operate it upon the so-called 'Co-operative' plan. Briefly stated, the plan contemplated the formation of a new corporation, all of the authorized capital stock of which was ultimately to be issued to and owned by purchasers of apartment units, the number of shares issued to each purchaser representing the capital value placed upon the particular apartment unit, according to its floor space and location. The purchasers of each unit were also to receive a proprietary lease thereof, for the term of one year renewable indefinitely at the option of the lessee, unless terminated by the lessor corporation for cause. The stock and lease are inseparable and their transfer or assignment is restricted in that the assignee must be approved by the stockholders, or the Board of Directors elected by them. The purchaser is obligated to pay 40% of the capital value initially, of which 2% is put in a reserve fund, and the balance of the price is payable in installments, and applied to the amortization of mortgages upon the property, taxes, maintenance and similar purposes.

"The co-operative plan became effective on October 1, 1947. At that time all of the issued shares of the corporate defendant were in the hands of the promoters, but the plan contemplated that as apartment units were sold, shares would be provided by the promoters according to a definite schedule, so that eventually all of the authorized stock would be held by purchaser-owners of the apartments. It appears that as of January, 1948, a majority of the shares were in the hands of such purchasers.

"Many of the tenants in the apartment house, holding leases from month to month from the former land-

lord, objected to the plan, and refused to purchase stock in the new enterprise. They formed a protective association and began this suit in August, 1947, contending that they are protected from annoyance and threatened eviction from the apartment units presently occupied by them, under the provisions of the Federal Housing and Rent Act.

"The Housing and Rent Act of 1947 became effective July 1, 1947. It denied recovery of possession of housing accommodations by a landlord, notwithstanding the fact that the tenant had no lease or that his lease had expired, so long as the tenant continued to pay rent, unless the tenant was violating certain obligations of his tenancy, other than obligations to pay rent higher than the rent permitted under the Act or to surrender possession. By Section 1899 (a) (2) an exception was made in case the landlord was seeking in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy. By section 1899 (a) (3) there was a further exception in case 'the landlord has in good faith contracted in writing to sell the housing accommodations to a purchaser for the immediate and personal use and occupancy as housing accommodations by such purchaser.' 'Housing accommodations' is defined in section 1892 to mean 'any building, structure, or part thereof . . . including houses, apartments . . . used for living or dwelling purposes . . . .'

"The question presented is whether purchasers of stock in the co-operative, with the right to possession of particular apartment units under proprietary lease, are purchasers of housing accommodations within the meaning of the Act. The learned Chancellor held that they were not, relying principally upon the fact that the proprietary lease is called a lease and contains many of the clauses customarily found in ordinary leases, and that the amount paid for the stock

actually is payment for occupancy of the accommodations. He also stressed the point that title to the property was technically in the corporation and not in the individual stockholders. We think, however, that the solution cannot turn upon the form of the transaction. It is true that the plan is somewhat novel in this State, and that its obvious purpose is to effect a change of occupants, in the event that the present tenants decline to purchase stock in the enterprise. But on the other hand, the essence of the transaction is that in exchange for a capital investment, a prospective purchaser will obtain a right, under the proprietary lease, to occupy a particular unit for an indefinite period, during good behaviour. When all the stock is disposed of, the promoters will be out of the picture and the management will be in the hands of the stockholders. These are some of the most important indicia of ownership. It could hardly be contended that the sale of a house to a group as tenants in common, would not be within the exception. From the nature of the subject matter, ownership under a co-operative plan must take the form of rights incident to stock ownership or membership in a corporation. The substantial nature of those rights, rather than the form of the transaction must be considered. We think the language of the Act is open to construction and the solution must be sought by the application of the usual rules of construction, with due regard to the history of the legislation, in order to ascertain the intention of Congress.

''Restrictions against evicting tenants from housing accommodations were first imposed by the Emergency Price Control Act of 1942, 50 U. S. C. A. Appendix, Sec. 901 et seq. Authority to establish maximum rents was given to the Office of Price Administration, commonly known as O. P. A. Eviction proceedings could not be brought under local law, except upon receipt of a certificate of eviction from the Federal agency.

Sec. 6 (b) (2) of the regulations adopted under that Act authorized the issuance of a certificate where the housing accommodations were sold. On February 17, 1945, a special regulation, Sec. 6 (b) (3) was adopted providing that in case of a co-operative apartment house corporation formed after that date, no certificate of eviction should be issued 'unless at the time of the issuance of the certificate stock in the co-operative has been purchased by persons who are then tenants of at least 80% of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises.' As to co-operatives formed prior to February 17, 1945, it was clearly implied that a certificate of eviction could properly have been issued without regard to any percentage requirement of stock ownership.

''The effect of the adoption of the Act of 1947 was to eliminate the necessity for certificates of eviction, and to repeal all of the regulations adopted thereunder. In lieu thereof, the Act itself furnishes the test as to the circumstances under which eviction will lie. It is important to note that Congress did not see fit to write into the Act the provisions of the previous regulations as to a percentage requirement in the case of co-operatives, although it did incorporate substantially the provisions of the prior regulation 6 (b) (2). The implication from the prior history and administrative interpretation, is that prospective tenants and purchasers of stock under a co-operative plan were to be treated as purchasers entitled to evict former tenants under the new Act.

''Our attention has been called to no case in which a court of last resort has construed the section of the Act in question. However in *Whitmarsh v. Farnell*, 1948, 273 App. Div. 584, 78 N. Y. S. 2d 782, 787, in holding that the rights of a purchaser of an apartment in a co-operative apartment house in August 1947,

who brought a summary proceeding to evict the tenant, were governed by the local law relating to rent control, the court said:

" 'The Federal rent control law, 50 U. S. C. A. Appendix, Sec. 901 et seq., and regulations, which require that 80% of the tenants must be co-operative owners before a co-operative owner could dispossess a tenant, expired June 30, 1947. The new Federal rent law, 50 U. S. C. A. Appendix, Sec. 1881, et seq., and regulations, which became effective July 1, 1947, contained no such 80% requirement with respect to co-operative apartments. Therefore, as of September 10, the date of the trial herein, the tenant was not then protected by any such Federal requirement, as he had been prior to July 1, 1947.' See also *Kole v. Kousnetz,* 1948, 335 Ill. App. 123, 80 N. E. 2d 451. It has been recognized, under Acts modeled upon the Federal pattern, that purchasers of apartments under the co-operative plan are to be treated as landlords or owners. See *Hicks v. Bigelow,* D. C. Mun. Ct., 55 A. 2d 924, and *Smith v. Feigin,* 273 App. Div. 277, 77 N. Y. S. 2d 229, affirmed without opinion by the New York Court of Appeals, 298 N. Y. 534, 80 N. E. 2d 668. [See, also, *542 Morris Park Ave. Corporation v. Wilkins,* 197 N. Y. S. 625, 627; *Curtis v. Le May,* 60 N. Y. S. 2d 768, 770.]

"The appellant further calls attention to the fact that before the argument of this case on appeal, but after the passage of the decree appealed from, Congress extended the Act of 1947 for one year effective April 1, 1948, with certain amendments. Pub. Law 464, 80th Congress, ch. 161, 2nd session, 62 Stat. 98. Section 1899 (a) (3) was not amended, but (a) (2) was amended to expressly cover cases where a landlord sought possession for members of his family, and it was further 'Provided, That in the case of housing accommodations in a structure or premises owned or

leased by a co-operative corporation or association no action or proceeding under this paragraph or paragraph (3) to recover possession of any such housing accommodations shall be maintained unless stock in the co-operative corporation or association has been purchased by persons who are then stockholder tenants in occupancy of at least 65 per centum of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises; but this proviso shall not apply where such corporation or association acquires or leases such structure or premises after the effective date of the Housing and Rent Act of 1948 pursuant to a contract entered into prior to such date.'

"It is clear that we must take judicial notice of the amendment of the law. *Boyd v. Schaefer,* 184 Md. 621, 633, 42 A. 2d 721; *Hettleman v. Frank,* 136 Md. 351, 364, 110 A. 715. We must examine it, if for no other purpose, to determine its effect upon the pending case. *Cockerham v. Children's Society,* 185 Md. 97, 102, 43 A. 2d 197, 200. As was said in that case 'an appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence. *Day v. Day,* 22 Md. 530.' Compare *Rayder v. McGehee East and West Highway Dist.,* 161 Ark. 269, 256 S. W. 35. The appellees argue that the passage of the Act of 1948 renders the whole case moot, on the ground that any notices given under the Act of 1947 were rendered void by the Act of 1948, and that new notices, fixed at sixty days under the Act, as compared with 120 days under the City Ordinance, Sec. 1127a, Art. 4 of the City Code, adopted July 23d, 1947, will be wholly ineffective, because the amendment is not applicable to a co-operative that began operations pursuant to a contract executed prior to

April 1, 1948, and the 65% clause has not been and cannot be met.

"We think this argument is wholly fallacious. The effect of the adoption of the Act of 1948 was not to repeal the Act of 1947 but to continue it in full force and effect for another year, subject only to particular amendments. It follows that any notices given under the Act of 1947 (if valid under the local law, which we assume, but do not decide, for the purposes of this case) are valid after the passage of the Act of 1948, unless in conflict with some provision of the latter Act. The amendment quoted above, so far from cutting off any rights of eviction in the event of sale of housing accommodations, merely puts into effect, with a modified percentage, the regulation adopted under the Act of 1942 and repealed by the Act of 1947. It implies a right of eviction, in favor of purchasers of stock under the co-operative plan, under the 1947 Act, without limitation as to percentage. We think the last clause of the amendment, so far from denying a right of eviction in case of co-operatives contracting to acquire property prior to April 1, 1948, was designed to preserve existing rights and make the limitation apply prospectively. Any other construction would raise serious constitutional questions of discrimination and interference with vested rights.

"  .  .  .

"Decree reversed and case remanded for the passage of a decree in accordance with the views expressed in the foregoing opinion, with costs."

We are in full accord with the foregoing opinion and regard the case as conclusive of the question before us.

When the instant appeal came before this court at the instance of a substantial number of co-operative organizations, we saw fit to allow Isham, Lincoln and Beale, as *Amici Curiae*, to file a brief in

the cause. The able *Amici Curiae* concluded, after a study of the record, that plaintiff was entitled to an order for possession of the apartment unless he was prevented from obtaining possession solely by the prohibitions of the Housing and Rent Act of 1947. Since the filing of the briefs of plaintiff and the *Amici Curiae* it is obvious that defendant now fears that the decision of the trial court was based upon an erroneous interpretation of the said Act and he attempts to raise in this court points that he did not rely upon in the court below. Plaintiff is justified in complaining that it would be contrary to justice and proper procedure to permit defendant to now raise points that played no part in the determination of the case in the trial court. In any event, the established rule precludes defendant from abandoning in this court the position he took in the trial court. We may state, however, that we have read the record carefully and find that none of the said points has any substantial merit and some of them are based upon plain misstatements of the record.

The judgment of the Municipal Court of Chicago is reversed and the cause is remanded with directions to enter judgment in favor of plaintiff and to order the issuance of a writ of restitution.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SULLIVAN, J., concur.