760 A.2d 716

VILLAGE GREEN MUTUAL HOMES, INC.

v.

Delores RANDOLPH.

No. 11, Sept. Term, 2000.

Court of Appeals of Maryland.

Oct. 11, 2000.

180

David W. Erb (Bernard A. Cook of Saul, Ewing, Weinberg & Green, on brief), Baltimore, for petitioner.

Trafton T. Littlepage (Keith R. Havens of Havens & Associates, LLC, on brief), Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Petitioner, Village Green Mutual Homes, Inc. (Village Green), sought certiorari for review of an order of the Circuit Court for Prince George's County affirming a District Court dismissal of petitioner's claim for an "Order of Restitution of the possession of the leased premises" against respondent, Ms. Delores E. Randolph. The case originated in the District Court of Maryland, sitting in Prince George's County, which ruled that petitioner's Complaint and Summons against Tenant in Breach of Lease was improperly brought before the District Court. Ruling that the action did not involve a landlord-tenant matter, the District Court dismissed the case for lack of subject matter jurisdiction.[1] The circuit court, in

---

1. Maryland Code (1973, 1998 Repl.Vol., 2000 Cum.Supp.), section 4-401(4) of the Courts and Judicial Proceedings Article states that "the

affirming the dismissal, agreed. We granted petitioner's writ of certiorari to answer one question:

Are the landlord-tenant provisions set forth in Maryland's Real Property Article applicable to the Occupancy Agreement between Village Green, a housing cooperative, and its member, [Ms.] Randolph, where the Agreement states that thereunder the parties['] relationship is that of landlord and tenant?

We answer this question in the affirmative. Accordingly, we reverse the decision of the Circuit Court for Prince George's County and remand the case to that court with instructions to reverse the judgment of the District Court of Maryland, Prince George's County, and to remand the case to that court for trial.

## I. Facts & Background

Village Green is a non-stock, cooperative housing corporation whose tenants are members of the corporation.[2] In order to occupy a unit in the cooperative, an individual must sign two agreements with Village Green: (1) a Subscription Agreement, which serves, in part, as an application to become a member of the cooperative; and (2) an Occupancy Agreement, which secures an actual apartment for occupancy. Ms. Randolph entered into a Subscription Agreement with Village Green on August 3, 1970 and was subsequently approved for

District Court has exclusive original civil jurisdiction in ... [a]n action involving landlord and tenant ... regardless of the amount involved." Both the District and Circuit Court ruled (and the respondent contends) that a landlord-tenant relationship does not exist between the parties and, therefore, found that the action was in the nature of a foreclosure proceeding (an equity action) rather than a landlord-tenant action. Maryland Code (1973, 1998 Repl.Vol., 2000 Cum.Supp.), section 4–402(a) of the Courts and Judicial Proceedings Article states that "[e]xcept as provided in §§ 4–401 and 4–404 of this subtitle, the District Court does not have equity jurisdiction."

2. Village Green is a Housing and Urban Development (HUD) project designed for individuals with low to moderate income. Village Green's mortgage is insured by the Federal Housing Administration under section 221(d)(3) of the National Housing Act.

membership in the cooperative. On October 5, 1970, she entered into an Occupancy Agreement with Village Green for dwelling unit 132 located at 1527 Belle Haven Drive in Landover, Maryland.

On or about November 24, 1998, Village Green, in the District Court in Prince George's County, filed a Complaint and Summons against Tenant in Breach of Lease for an "Order of Restitution of the possession of the leased premises" against Ms. Randolph for failure to pay sums due under the agreement. On December 15, 1998, the District Court judge, *sua sponte*, dismissed the Complaint on the basis that the matter was improperly before that Court.[3] Village Green filed a timely appeal to the Circuit Court in Prince George's County. That court affirmed the ruling of the District Court on January 5, 2000, reasoning that "[p]arties cannot by contract or otherwise confer jurisdiction on the [District] Court." Petitioner filed a timely petition to this Court.

## II. Discussion

We hold that the relationship created by the occupancy agreement between Village Green and Ms. Randolph is subject, generally, to the landlord-tenant laws outlined in the Real Property Article of the Maryland Annotated Code. This Court has recognized that, generally, in Maryland, unless the relevant documents dictate otherwise, in actions involving the breach of occupancy agreements, the relationship of a housing cooperative to its member is that of landlord-tenant. Additionally, in making a determination whether an express writ-

---

3. On that same day, December 15, 1998, the District Court also dismissed a Village Green complaint against another tenant, Paulette Spencer, using the same rationale. The ruling in the *Spencer* case was also timely appealed to the Circuit Court for Prince George's County. However, the *Spencer* case and the case at bar were reviewed by different judges. On January 10, 2000, the Honorable Thomas P. Smith reversed the District Court's ruling in *Spencer*. He concluded that "the clear and unambiguous language of both the Subscription Agreement and the Occupancy Agreement result in the creation of a landlord/tenant relationship between [Village Green and Spencer]. The Undersigned concludes, therefore, that the claim was properly brought before the District Court as a landlord/tenant action."

ten landlord-tenant relationship exists between parties in a cooperative arrangement, the language and nature of the relevant agreements must be considered. "To determine the intent of the parties and the status created, it is necessary to look to 'the writing between the parties, to the circumstances under which they were made, and to the matter with which they deal.' " *Green v. Greenbelt Homes, Inc.*, 232 Md. 496, 504, 194 A.2d 273, 277 (1963) (quoting *1915 16th St. Co-op. Ass'n v. Pinkett*, 85 A.2d 58 (D.C.Mun.App.1951)). The express wording of the agreement between the parties in the case *sub judice* which we will discuss, *infra*, clearly defines the relationship as landlord and tenant.

### A. Applicability of Landlord–Tenant Law, Generally

In order to address the issue presented in the case *sub judice*, it will be helpful to first provide a general description of a cooperative housing corporation. Housing cooperatives have been in existence in the United States since the 1880's. B.C. Ricketts, Annotation, *Transfer of, and voting rights in, the stock of co-operative apartment association*, 99 A.L.R.2d 236, 237 (1965). A purpose for housing cooperatives originally was "to provide dwellers in thickly settled urban communities with some of the indicia of home ownership, together with the accompanying convenience and security, while freeing them from a large measure of the burdens and responsibilities inherent in the ownership and maintenance of a private residence in a large city." *Id.* at 237.

Maryland Code (1975, 1999 Repl.Vol.), section 5–6B–01 (f) of the Corporations and Associations Article defines a "cooperative housing" corporation as "a domestic or foreign corporation qualified in this State, either stock or nonstock, having only one class of stock or membership, in which each stockholder or member, by virtue of such ownership or membership, has a cooperative interest in the corporation."[4] A

---

4. In 1986, the Maryland General Assembly enacted the Maryland Cooperative Housing Corporation Act codified at Maryland Code (1975, 1999 Repl.Vol.), title 5, subtitle 6B of the Corporations and Associations

cooperative housing corporation is a unique legal entity. As one court said, "[c]ooperative housing plans are sui generis [5]: they are often referred to as 'legal hybrids' because they contain elements of both property ownership and leasehold." *Cunningham v. Georgetown Homes, Inc.*, 708 N.E.2d 623, 625 (Ind.App.1999); *see also Quality Management Services, Inc. v. Banker*, 291 Ill.App.3d 942, 945, 226 Ill.Dec. 264, 266, 685 N.E.2d 367, 369 (1997) ("[A] cooperative is a 'legal hybrid' in that the member possesses both stock and a lease.").

■ It is important to recognize the relevant portions of this legal hybrid and how they affect the outcome of the case at bar. This intertwined relationship can be described as follows:

[O]wnership of a cooperative does not include individual fee simple title to a unit. Rather ... all cooperatives involve some form of undivided joint ownership by individual cooperators in the land and building or buildings that make up the complex.... Upon its formation, the cooperative corporation acquires either a fee simple title to or a long term lease on the complex.... The organizers of the cooperative determine how many shares of the cooperative's own corporate stock are to be allocated to each living unit. The allocation formula is usually designed so that the number of shares that are allocated to a particular living unit will be in

Article. Whether the current Act applies to the case *sub judice,* which involves a preexisting cooperative association, is an issue we need not resolve because the result we would reach would be the same in either event. However, a mention of the Act is helpful as some of its provisions are the codification of principles previously expressed by Maryland common law. Section 5–6B–01(p)(1) defines proprietary lease as "an agreement with the cooperative housing corporation under which a member has an exclusive possessory interest in a unit and a possessory interest in common with other members in that portion of a cooperative project not constituting units and *which creates a legal relationship of landlord and tenant between the cooperative housing corporation and the member, respectively.*" (Emphasis added.)

5. *Black's Law Dictionary* 1434 (6th ed.1990) defines sui generis as "[o]f its own kind or class; *i.e.,* the *only one* of its own kind; peculiar." (Emphasis in original.)

the same proportion to the total number of shares as the value of that unit is to the value of the entire complex. A buyer of a unit in a cooperative acquires not an actual title to his respective unit but, rather, the ownership of the shares of the cooperative's stock that are allocated to his specific unit. *Therefore, a unit owner in a cooperative is, in reality, not a unit owner at all but rather a shareholder in the corporation that owns the complex in which the unit is situated. As a part of the cooperative agreement each shareholder, by virtue of being a shareholder, automatically becomes entitled to a proprietary lease to the specific unit to which his shares of stock are assigned.* It is this proprietary lease which in turn gives him the exclusive right to occupy his unit.

Patrick E. Kehoe, *Cooperatives and Condominiums* 14 (1974) (emphasis added). *See* William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 2991.05 (perm. ed. rev.vol.1997) ("Generally, a cooperative apartment corporation owns the land and apartment building and its individual shareholders have the right to proprietary leases covering particular apartments, which are considered to be personal property rather than realty and under which the lessee-shareholder is in much the same position as any other tenant under the usual leasing arrangement.") (footnotes omitted).

We considered the nature of a cooperative housing corporation's relationship with its shareholders in *Green v. Greenbelt Homes, Inc.*, 232 Md. 496, 194 A.2d 273 (1963). In that case, which is factually similar to the case at bar, we addressed the question of whether a member of a cooperative housing corporation held the property as a leasehold or in fee simple. Ms. Green was a member and resident whose relationship with the cooperative was terminated by Greenbelt Homes, due to numerous violations of the contractual agreements.[6] Ms. Green

---

6. In the notice of termination, the board of directors outlined the numerous violations: (1) having an adult male, who was not related by blood or marriage living with her; (2) failing to provide sanitary care for her pets which caused odors and attracted vermin; and (3) permit-

argued that the provisions of the contract relating to termination were invalid. She contended that "the financial terms and the wording of the contract ... were sufficient indicia of ownership to classify her as an owner of real property rather than a holder of a leasehold interest." *Id.* at 501, 194 A.2d at 275 (footnote omitted). Ms. Green relied on our decision in *Tudor Arms Apts. v. Shaffer*, 191 Md. 342, 62 A.2d 346 (1948). In *Tudor Arms*, where this Court was construing the effect of a rent control act, we held that a lessee of a cooperative apartment unit was, for the purposes of the Federal Housing and Rent Act of 1947, an owner. Our holding was limited to that specific context.[7] Moreover, in *Greenbelt Homes*, we commented that our statement in *Tudor Arms*, that "the essence of the transaction is that in exchange for a capital investment, a prospective purchaser will obtain a right, under the proprietary lease, to occupy a particular unit for an indefinite period, *during good behavior*" served to undermine Ms. Green's argument. *Greenbelt Homes*, 232 Md. at 501, 194 A.2d at 276 (quoting *Tudor Arms*, 191 Md. at 348, 62 A.2d at 348). We concluded that our holding in *Tudor Arms*, "instead of supporting [Ms. Green's] contention that she was an owner and not a lessee, clearly indicates that in [such a case]—where the issue concerns the right of a member to occupy a dwelling unit after proof of her misconduct—the member of the cooperative corporation would be held to be a lessee rather than an

---

ting her daughter to host noisy, unchaperoned parties both day and night. *See Greenbelt Homes*, 232 Md. at 500, 194 A.2d at 275.

**7.** 1 American Law of Property at 201–02 (Casner ed.1952):

"There are cases arising under rent control acts in which the courts have treated the tenant-shareholder as an owner or landlord, rather than a tenant, for the purpose of permitting him to oust a preceding tenant under provisions permitting such action by a landlord or owner who requires possession for his personal occupancy. In view of the purposes of these provisions and of the cooperative apartment organization, it would seem justifiable to disregard the corporate entity in these cases. *Such a result is not inconsistent with the holding that a landlord-tenant relationship exists between the corporation and the tenant-shareholder.*" [Emphasis added.] [Footnotes omitted.]

owner." *Greenbelt Homes,* 232 Md. at 501, 194 A.2d at 275. We continued our analysis in *Greenbelt* by stating:

"[I]n legal theory the corporation is distinct from its shareholders [or members], no one of whom has a right to receive legal title to any specific property of the corporation under the better-drawn plans, and it is necessary that this distinction be observed in order to carry out the purposes of the cooperative. *The courts have recognized that the relation is that of landlord and tenant in allowing the corporation the usual remedies of a landlord against a tenant."*

*Id.* at 503, 194 A.2d at 276 (emphasis added) (alteration in original) (quoting 1 American Law of Property at 200 (Casner ed.1952)).

We also find support for our rationale in the holdings of other state courts. *California Coastal Comm'n v. Quanta Inv. Corp.,* 113 Cal.App.3d 579, 597, 170 Cal.Rptr. 263, 272 (1980) ("[T]he shareholder in a stock cooperative is a mere lessee, and stands in a landlord-tenant relationship to the corporation which owns the land."); *Clydesdale, Inc. v. Wegener,* 372 A.2d 1013, 1015 (D.C.1977)) holding that "[T]he relationship between the operator of a cooperative apartment building and a stockholder-tenant is one of landlord and tenant, and that the right to continue in possession of any given unit depends upon compliance with the terms of the contract and lease."); *Jordan v. Placer Holding Co.,* 213 Ga.App. 218, 219, 444 S.E.2d 112, 114 (1994) (Holding that "a landlord-tenant relationship exists in the context of housing cooperatives."); *Harper Square Housing Corp. v. Hayes,* 305 Ill.App.3d 955, 962, 239 Ill.Dec. 135, 141, 713 N.E.2d 666, 672 (1999)("[I]n a usual cooperative situation the relationship between the cooperative and its members is that of a landlord and tenant."); *Quality Management Services Inc. v. Banker,* 291 Ill.App.3d 942, 947, 226 Ill.Dec. 264, 267, 685 N.E.2d 367, 370 (1997) ("[I]t makes sense that the cooperative should have access to the familiar and effective remedies available to a landlord against a delinquent tenant."); *333–335 East 209th Street HDFC v. McDonnell,* 513 N.Y.S.2d 935, 936, 134 Misc.2d 1022, 1024 (N.Y.City Civ.Ct.1987) ("[I]t is well settled

law that a proprietary lease is no different from any other type of lease, and the relationship between a shareholder-tenant and the co-op corporation is akin to that of landlord and tenant.") [8]

## B. The Contract in the Case

Maryland has long adhered to the law of objective interpretation of contracts. *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 340, 731 A.2d 441, 444 (1999); *Calomiris v. Woods,* 353 Md. 425, 435, 727 A.2d 358, 363 (1999); *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298, 304 (1996); *State v. Attman/Glazer P.B. Co.,* 323 Md. 592, 604, 594 A.2d 138, 144 (1991); *see also Cloverland Farms Dairy, Inc. v. Fry,* 322 Md. 367, 373, 587 A.2d 527, 530 (1991). "In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Adloo,* 344 Md. at 266, 686 A.2d at 304 (quoting *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)); *see also Beckenheimer's Inc v. Alameda Assocs. Ltd. Partnership,* 327 Md. 536, 547, 611 A.2d 105, 110 (1992) (holding that when interpreting

---

8. We note that there are jurisdictions which disagree with this point of view and hold that the relationship between a cooperative and its members is not that of landlord and tenant. *See In re Robertson,* 147 B.R. 358, 362 (Bkrtcy.D.N.J.1992) ("[T]he relationship between a cooperative and a cooperator is not the same as that between a landlord and a tenant."); *Plaza Road Cooperative, Inc. v. Finn,* 201 N.J.Super. 174, 181, 492 A.2d 1072, 1077 (1985) ("[T]he relationship between the association and a cooperator-shareholder is not that of landlord and tenant for the purpose of a summary dispossess action."); *Kohler v. Snow Village, Inc.,* 16 Ohio App.3d 350, 354, 475 N.E.2d 1298, 1303 (1984) ("[T]he occupancy agreement signed by the parties, as well as all such agreements or proprietary leases utilized in cooperative apartments, are not 'rental agreements'. . . .").

contracts, "[a] party's intention will be held to be what a reasonable person in the position of the other party would conclude the manifestations to mean.").

When interpreting the contractual relationship between a cooperative and its members, we concluded in *Greenbelt* that

[a]n important factor in the maintenance of a cooperative housing project is the control of the activities of the cooperative members living within the project. In a recent article, *Restrictions on the Use of Cooperative Apartment Property,* by Arthur E. Wallace, 13 Hastings Law Journal, 357, 363, it is said:

"The economic and social interdependence of the tenant-owners demands cooperation on all levels of cooperative life if a tolerable living situation is to be maintained. Each tenant-owner is required to give up some of the freedoms he would otherwise enjoy if he were living in a private dwelling and likewise is privileged to demand the same sacrifices of his cotenant-owners with respect to his rights.

"By analogy, the cooperative agreement is really a community within a community, governed, like our municipalities, by rules and regulations for the benefit of the whole. Whereas the use of lands within a city is controlled by zoning ordinances, the use of apartments within the cooperative project is controlled by restrictive covenants. The use of the common facilities in the project is controlled on the same theory that the use of city streets and parks is regulated. In both situations compliance with the regulations is the price to be paid to live in and enjoy the benefits of the particular organization."

To determine the intent of the parties and the status created, it is necessary to look to "the writing between the parties, to the circumstances under which they were made, and to the matter with which they deal." *1915 16th St. Co-op. Ass'n v. Pinkett,* 85 A.2d 58 (D.C.Mun.App.1951). We think it is clear from the mutual ownership contract that the restrictions on the use of the cooperative dwelling unit were

covenants between the member and the corporation, the breach of which gave the corporation the right to terminate the contract. We see no practical difference between this contract and a lease which provides that it can be terminated by the lessor when its provisions as to the use to be made of the premises by the lessee are breached.[9]

*Greenbelt*, 232 Md. at 503–04, 194 A.2d at 277; *see also Maryland Commission on Human Relations v. Greenbelt Homes, Inc.*, 300 Md. 75, 81, 475 A.2d 1192, 1196 (1984) ("[We] recognized that the activities of cooperative members may be contractually regulated and that these regulations should be enforced.").[10]

 The parties involved signed a proprietary lease agreement. We have recognized that generally, there is no difference between a proprietary lease and an ordinary lease. A proprietary lease is the "[t]ype of lease . . . between owner-cooperatives and tenant-stockholders." *Black's Law Dictionary* 1219 (6th ed.1990); *see Tudor Arms*, 191 Md. at 347, 62 A.2d at 349 ("[T]he proprietary lease is called a lease and contains many of the clauses customarily found in ordinary

---

**9.** The termination clause in *Greenbelt* read as follows:

"13. *Termination of Contract by Corporation for Default or for Cause:* In the event of default by the Member * * * of any payments or charges required under this Contract, or violation of any of the provisions hereof, the Corporation may terminate this contract upon ten (10) days written notice to the Member. The Corporation may terminate this Contract upon thirty (30) days written notice if its board of directors subject to and in accordance with provisions of the By–Laws of the Corporation, shall determine that the Member, for sufficient cause is undesirable as a resident in Greenbelt because of objectionable conduct on the part of the Member or of a person living in his dwelling unit. To violate or disregard the rules and regulations provided for in paragraph 7(b) hereof, after due warning, shall be deemed to be objectionable conduct."

*Greenbelt*, 232 Md. at 499–500, 194 A.2d at 274.

**10.** In *Maryland Commission on Human Relations v. Greenbelt Homes, Inc.*, 300 Md. 75, 81–82, 475 A.2d 1192, 1196 (1984), we considered whether a housing cooperative's contractual restriction against non-family members' residing in the unit constituted discrimination on the basis of marital status. We held that it did not and upheld the agreement between the parties.

leases."); *Greenbelt,* 232 Md. at 502, 194 A.2d at 276 ("[P]roprietary leases are made by the corporation to the shareholders, in which there are, among other things, the provisions concerning the term of the lease and the payment of rent, which is based on estimates of operational costs and capital indebtednesses."); *see also, supra,* footnote 4.

The Occupancy Agreement at issue in the case *sub judice* is even more closely aligned with a lease than the agreement at issue in *Greenbelt.* The Occupancy Agreement at issue here expressly states, in Article 13, that in the event of a default and a failure to cure by Ms. Randolph, and on notice by Village Green, the Occupancy Agreement will terminate,

> and it shall thereupon be lawful for [Village Green] to reenter the dwelling unit and to remove all persons and personal property therefrom, either by summary dispossess proceedings or by suitable action or proceeding at law or in equity *or by any other proceedings which may apply to the eviction of tenants* ... And to repossess the dwelling unit in its former state as if this agreement had not been made.... [Emphasis added.]

Article 13 further provides that Ms. Randolph

> expressly *agrees that there exists under this Occupancy Agreement a landlord-tenant relationship* and that in the event of a breach or threatened breach by [Randolph] of any covenant or provision of this Agreement, *there shall be available to [Village Green] such legal remedy or remedies as are available to a landlord for the breach or threatened breach under the law by a tenant of any provision of a lease or rental agreement.* [Emphasis added.]

Additional language, which is suggestive of a landlord-tenant relationship, is included throughout the Occupancy Agreement. For example, Article 4, concerning a member's option to renew, provides in relevant part, "[i]t is covenanted and agreed that the term ... shall be extended and renewed from time to time ... for further periods of three years...." Article 5 provides, at one point, "[a]ny sublessee ... if approved ... may enjoy the rights to which the Member is

entitled...." Article 7 is titled, "NO SUBLETTING WITH-OUT CONSENT OF CORPORATION," and it contains various provisions relating to subleasing. Article 12 limits the use of certain appliances without the consent of the corporation. These express provisions are consistent with a landlord-tenant relationship. They are, in a general sense, inconsistent with fee simple ownership of real property.

Other States have held that the relationship between a cooperative and a member may be controlled by the contract between them. *See Burgess v. Pelkey*, 738 A.2d 783, 787 (D.C.1999) (recognizing that "[t]he cooperative instruments, which include the bylaws and sales agreement, constitute a contract governing the legal relationship between the cooperative association and the unit owners."), *cert. denied*, —— U.S. ——, 120 S.Ct. 1834, 146 L.Ed.2d 778 (2000); *Jordan v. Placer Holding Co.*, 213 Ga.App. at 219, 444 S.E.2d at 113 (court concluded that its determination would be based solely on the express terms of the occupancy agreement and did not find error in trial court's finding that a landlord-tenant relationship existed); *Cunningham v. Georgetown Homes, Inc.*, 708 N.E.2d at 626 (Did not find the relationship between parties to be landlord-tenant but recognized that "when a member joins a cooperative, and signs an occupancy agreement, which contains certain conditions, she obligates herself to those conditions.").

We conclude that under Maryland law, there is no practical difference between this express Occupancy Agreement and a lease. To the extent that the express Occupancy Agreement in this case were to control the relationship between the parties, it, in accordance with its express terms, creates a landlord-tenant relationship between Village Green and Ms. Randolph.

### III. Conclusion

We hold that, generally, in Maryland, the relationship created by an occupancy agreement between a housing cooperative and its membership is that of landlord-tenant and that, generally, a member holds a leasehold, rather than a fee

simple interest in an apartment she or he occupies. Additionally, in the case *sub judice*, the agreement at issue, the Occupancy Agreement, expressly created a landlord-tenant relationship. Accordingly, actions for the restitution of possession of the premises that involve cooperatives may be maintained in the District Court.

Accordingly, the circuit court's affirmance of the lower court's ruling was in error. We shall reverse.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE DISTRICT COURT OF MARYLAND AND TO REMAND THE CASE TO THAT COURT FOR TRIAL; COSTS TO BE PAID BY RESPONDENT.**