CENTRAL TERRACE CO-OPERATIVE, Plaintiff-Appellee, v. DAVID MARTIN, Defendant-Appellant.

Second District   No. 2—90—0856

Opinion filed March 21, 1991.—Rehearing denied April 29, 1991.

David F. Black, of UAW-Chrysler Legal Services Plan, of Belvidere, for appellant.

Nancy Hyzer, of Hyzer Law Firm, of Rockford, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, David Martin, appeals from an order of the trial court granting plaintiff, Central Terrace Co-Operative (CTC), the relief it sought in its complaint for forcible entry and detainer. Defendant raises three issues on appeal: (1) whether the forcible entry and detainer statute applies to this case; (2) whether the co-op's board of directors followed proper procedures in bringing its complaint and terminating defendant's contractual rights; and (3) whether the trial court used the proper standard in determining the merits of plaintiff's complaint. We reverse.

On March 1, 1965, Martin and CTC executed an agreement entitled, "Mutual Ownership Contract." Pursuant to this agreement, Martin was entitled to perpetual use of 1212 Cypress Terrace in exchange for payment of $3,640. Martin has completely paid the purchase price. Martin initially occupied his unit with his wife. Martin's wife died in 1984.

In 1989, Martin sent a letter to CTC's board stating that his daughter was moving out of the unit and his niece was moving in to act as his cook and housekeeper. The board responded by asking Martin to have his niece fill out a "sublease application" for a period not to exceed six months. Apparently, Martin did not reply to this request.

On June 9, 1990, the board voted to "follow through with a 5 Day Notice, then a Forcible Entry." Thereafter, Martin received a "Notice of Termination and Intention to Institute Forcible Entry and Detainer." The notice alleged Martin had failed to occupy his unit and had sublet the unit without approval. Martin was given until March 3 to either personally occupy the premises or obtain approval to sublet.

On March 2, one day before the deadline given to Martin, CTC filed a complaint for forcible detainer. On May 1, after the complaint had been filed, CTC's board met pursuant to a request by Martin. The board's president and three other people gave their opinion that Martin did not reside at 1212 Cypress Terrace. The board voted to terminate Martin's membership in the co-op.

On May 11, a bench trial was conducted by the court. The trial court's order was filed on July 17, 1990. The court found "this cause was properly brought under the Forcible Entry and Detainer Statute in that a landlord tenant relationship was created by the Cooperative lease agreement." The court also stated "the standard of review for the court is one of determining reasonableness and not conducting a trial de novo." Additionally, the court found "That the Board of Directors followed proper procedures in bringing the Complaint against

the defendant and in terminating the contract. The plaintiff has shown, by a preponderance of the evidence, that the Board's decision that the defendant was not occupying the dwelling was a reasonable and non-arbitrary finding."

The court ordered possession of the premises be restored to CTC.

Defendant first contends the forcible entry and detainer statute is not applicable to the case at bar. The trial court found the statute applied because "a landlord tenant relationship was created by the Cooperative lease agreement."

■ The forcible entry and detainer statute (statute) (Ill. Rev. Stat. 1989, ch. 110, par. 9—101 *et seq.*) is in derogation of common law, and recovery under the statute is confined to cases clearly within its provisions. (*Heritage Pullman Bank v. American National Bank & Trust Co.* (1987), 164 Ill. App. 3d 680, 686.) However, if a case falls within the parameters of the statute, the court should liberally construe its provisions to effectuate the remedy it provides. (*Heritage,* 164 Ill. App. 3d at 686.) The statute sets forth eight circumstances in which an action may be maintained for forcible entry and detainer. (See Ill. Rev. Stat. 1989, ch. 110, par. 9—102(a).) A situation concerning a leasehold is specifically provided for in the statute (Ill. Rev. Stat. 1989, ch. 110, par. 9—102(a)(4)). Additionally, it is clear that condominiums and common interest communities fall within the parameters of the statute. (Ill. Rev. Stat. 1989, ch. 110, pars. 9—102(a)(7), (a)(8).) However, it is also clear that cooperatives are expressly excluded from the definition of common interest communities. Ill. Rev. Stat. 1989, ch. 110, par. 9—102(c).

In its letter opinion, the trial court cited this court's decision in *Sinnissippi Apartments, Inc. v. Hubbard* (1983), 114 Ill. App. 3d 151, in support of its finding that a leasehold arrangement was established by the "Cooperative lease agreement." In *Sinnissippi,* the plaintiff was a corporation organized to operate a cooperative apartment complex. The defendant was a shareholder of the corporation and also a lessee pursuant to a lease agreement with the plaintiff/corporation. The plaintiff filed a complaint seeking monies allegedly due and owing for increased maintenance charges. In discussing the relationship of the parties in a co-op, this court quoted the following language set forth in 1 American Law of Property, §3.10, at 199-200 (1952):

> " 'Shares of stock *** are sold to persons who will occupy the housing units, the number of shares *** depending on the value of the particular apartment or unit. "Proprietary" leases are issued by the corporation to the shareholders. These leases contain provisions common to other leases. *** Rent, which is sub-

ject to being increased or decreased, is based upon estimates of amounts necessary to pay operational costs and interest and installments of principal on any capital indebtedness. Other provisions include covenants against assignment without the consent of the board of directors of the corporation, that the tenant will make inside repairs but no structural changes, and that the corporation may forfeit the lease for breach of various of the covenants or violation of the rules of conduct established by the corporation.

\* \* \*

It would seem clear that the lease in the usual cooperative apartment organization creates the relation of landlord and tenant between the corporation and the shareholder-occupant. Of course, the purpose of the organization is to approach individual home ownership as nearly as is possible in a situation where the only practical solution is common operation and management of many features, and the number of the occupant's shares are determined by the value of the apartment he occupies. But in legal theory the corporation is distinct from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation under the better-drawn plans, and it is necessary that this distinction be observed in order to carry out the purposes of the cooperative. The courts have recognized that the relation is that of landlord and tenant in allowing the corporation the usual remedies of a landlord against a tenant.' " (*Sinnissippi*, 114 Ill. App. 3d at 156.)

We also noted that the relationship between the tenant/shareholder and the owner/corporation is determined by reviewing, in totality, the certificate of incorporation, stock offering perspectives, stock subscription agreement and the proprietary lease. *Sinnissippi*, 114 Ill. App. 3d at 157.

■ The case at bar is distinguishable from *Sinnissippi* in that this situation does not appear to be the "usual" cooperative organization. The court called the agreement executed by the parties a "Cooperative lease agreement" while the parties titled it a "Mutual Ownership Contract." Defendant did not sign a lease. The only document executed was entitled "Mutual Ownership Contract." In the agreement, defendant was referred to as a "member" not a lessee. The agreement further provided that "perpetual use of each particular dwelling shall be delivered by the corporation to the member in the form of a membership certificate." Additionally, the bylaws of CTC

state the corporation was "formed for the purpose of owning residential property on a cooperative basis." The stated purpose did not include leasing property. Contra *Moss v. Elofsson* (1990), 194 Ill. App. 3d 256.

We determine that, after a review of the documents presented to the trial court, the trial court's finding that a landlord/ tenant relationship existed was against the manifest weight of the evidence. CTC elected to give possessory rights to members based upon ownership interests not lease agreements.

■ We also note that, in the case at bar, the trial court found the contract was properly terminated. In so doing, the court was not only adjudicating defendant's possessory rights but also defendant's ownership rights. A forcible entry and detainer action is summary in nature, and the litigation is limited to the issue of who is entitled to possession of the property. (*Continental Illinois National Bank & Trust Co. v. Wilson* (1982), 103 Ill. App. 3d 357, 360.) The question of title cannot be litigated. *Kitzer v. Rice* (1967), 90 Ill. App. 2d 72, 77.

■ Since there was no landlord/tenant relationship created in this case, no other provision of the statute would bring this particular cooperative within the parameters of the statute, and CTC's suit sought to terminate ownership rights, the trial court erred by finding this case was properly brought under the forcible entry and detainer statute.

Due to our resolution of the above issue, the remaining issues need not be addressed.

For the above stated reasons, the judgment of the circuit court of Winnebago County is reversed.

Reversed.

BOWMAN and GEIGER, JJ., concur.