FIFTH DIVISION

August   , 1997

No. 1-96-2103

QUALITY MANAGEMENT SERVICES, INC., ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 96 M1 706924

)

SARVADAMAN and EILEEN BANKER, ) The Honorable

) Raymond Funderburk,

Defendants-Appellants. ) Judge, Presiding.

 

JUSTICE HOURIHANE delivered the opinion of the court:

The sole issue on appeal is whether the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101, 
et seq.
 (West 1996)) applies to cooperatives.  We hold that it does and therefore affirm the judgment of the circuit court.

Defendants, Sarvadaman and Eileen Banker, are members of the Rocky Ledge Cooperative, Inc. (Cooperative).  Pursuant to the terms of an Occupancy Agreement, defendants occupied an apartment in the Cooperative's building located at 7857-B South Shore Drive in Chicago.  The Occupancy Agreement obligates defendants to pay certain "monthly carrying charges" representing their proportionate share of the Cooperative's operating expenses.

Plaintiff, Quality Management Services, Inc., as agent for the Cooperative, filed a forcible entry and detainer action against defendants, seeking unpaid monthly carrying charges of $2,503.25, plus attorney fees and costs.  The circuit court entered an order of possession and money judgment in favor of the Cooperative.  Defendants filed a motion to vacate the judgment and dismiss the action, arguing that the Act does not apply to cooperatives.  The circuit court denied the motion and this appeal followed.  155 Ill. 2d R. 301.

ANALYSIS

Section 9-102(a) of the Act sets forth eight circumstances under which an action for forcible entry and detainer may be maintained.  Plaintiff asserts that its forcible action is appropriate under subsection (4) which makes the Act applicable to situations involving a leasehold.  735 ILCS 5/9-102(a)(4) (West 1996); 
Central Terrace Co-Operative v. Martin
, 211 Ill. App. 3d 130, 132, 569 N.E.2d 944 (1991) (hereafter 
Central Terrace
).  Defendants argue that under subsection (8), cooperatives are expressly excluded from the coverage of the Act.   Subsection (8) provides that an action for forcible entry and detainer may be maintained "[w]hen any property is subject to the provisions of a declaration establishing a common interest community ***."  735 ILCS 5/9-102(a)(8) (West 1996).  Under section 9-102(c)(1), "common interest community" is defined, in relevant part, as "
real estate other than a condominium or cooperative". 735 ILCS 5/9-102(c)(1) (West 1996).  Citing 
Central Terrace
, defendants assert that because the statutory definition of common interest community expressly excludes cooperatives, the Act does not apply to cooperatives
.  We disagree.

Under defendants' construction of section 9-102(c)(1), condominiums would also not fall within the coverage of the Act since condominiums, like cooperatives, are excluded from the definition of common interest community.  However, this result is patently at odds with section 9-102(a) which specifically provides that a forcible action may be maintained when property is subject to the provisions of the Condominium Property Act.  735 ILCS 5/9-102(a)(7) (West 1996).  We note, further, that section 9-102(b) sets forth certain requirements which must be satisfied before the Act is deemed applicable to a particular common interest community.  Thus, by excluding condominiums and cooperatives from the definition of common interest community, section 9-102(c)(1) in effect excludes condominiums and cooperatives from the requirements of section 9-102(b).  This is not, however, tantamount to excluding cooperatives from the coverage of the Act. 

As to defendants' reliance on 
Central Terrace
, although some legal publishers have cited this case for the proposition that cooperatives are excluded from the forcible statute
(footnote: 1), 
Central Terrace
 does not so hold.  In 
Central Terrace
, David Martin, a member of the Central Terrace Co-Operative (CTC), appealed from a judgment in favor of CTC on its complaint for forcible entry and detainer.  The trial court, relying on this court's earlier decision in 
Sinnissippi Apartments, Inc. v. Hubbard
, 114 Ill. App. 3d 151, 448 N.E.2d 607 (1983) (hereafter 
Sinnissippi
), found that a landlord-tenant relationship was created by the cooperative lease agreement and thus CTC's cause was properly brought under the forcible statute.  On appeal, this court reversed.  We determined that Martin's relationship with CTC did not appear to be the "usual" cooperative arrangement set forth in 
Sinnissippi
.  Martin executed only one agreement, a "Mutual Ownership Contract", not a lease, which referred to Martin as a member, not a lessee.  The contract provided that "'perpetual use of each particular dwelling shall be delivered by the corporation to the member in the form of a membership certificate.'"  
Central Terrace
, 211 Ill. App. 3d at 133.  Further, the bylaws stated that the corporation was formed for the purpose of owning residential property on a cooperative basis, not leasing it.  Thus, we held that the trial court's finding that a landlord-tenant relationship existed was against the manifest weight of the evidence.

In 
Sinnissippi
, we considered whether a member of a cooperative could be compelled by the board of directors to accept additional shares in the cooperative because certain improvements made by the member resulted in an additional contribution to capital.  This court reviewed at length the nature of a cooperative:

"'Shares of stock *** are sold to persons who will occupy the housing units, the number of shares *** depending on the value of the particular apartment or unit.  "Proprietary" leases are issued by the corporation to the shareholders.  These leases contain provisions common to other leases.  *** Rent, which is subject to being increased or decreased, is based upon estimates of amounts necessary to pay operational costs and interest and installment of principal on any capital indebtedness.

***

It would seem clear that the lease in the usual cooperative apartment organization creates the relation of landlord and tenant between the corporation and the shareholder-occupant
.  Of course, the purpose of the organization is to approach individual home ownership as nearly as is possible in a situation where the only practical solution is common operation and management of many features, and the number of the occupant's shares are determined by the value of the apartment he occupies.  But in legal theory the corporation is distinct from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation under the better-drawn plans, and it is necessary that this distinction be observed in order to carry out the purposes of the cooperative.  The courts have recognized that the relation is that of landlord and tenant in allowing the corporation the usual remedies of a landlord against a tenant.'"  (Emphasis added.)  
Sinnissippi
, 114 Ill. App. 3d at 156, quoting 1 American Law of Property sec. 3.10, at 199-200 (1952).

We also observed that a cooperative is a "legal hybrid" in that the member possesses both stock and a lease.  Although the 
Sinnissippi
 case arose out of an action in small claims court, rather than in the context of a forcible entry and detainer action, we nonetheless find it persuasive.

The proprietary lease, also referred to as an occupancy agreement, is the basic document entitling a member of a cooperative the right to occupy a particular dwelling unit and setting out the member's rights in relation thereto.  As set forth in 
Sinnissippi
, the proprietary lease generally contains many of the provisions found in long-term residential leases.  See also 16 Illinois Jurisprudence, Property § 29:64, at 573 (1994).  Thus, we agree with plaintiff
 that, in the usual situation, the relationship between a cooperative and its members is, in part, that of landlord and tenant.  The existence of such a relationship brings cooperatives within the purview of section 9-102(a)(4) of the Act.   

Although 
Central Terrace
 recognized that there may be some instances where there are insufficient indicia of a landlord-tenant relationship to bring a particular cooperative within the coverage of the Act, we do not find that to be the case here.  The Occupancy Agreement executed by defendants states that the Cooperative was "formed for the purpose of acquiring, owning and operating a cooperative ***, with the intent that its members shall have the right to occupy the dwelling units thereof under the terms and conditions hereinafter set forth."  The agreement further states that "the Cooperative hereby lets to the Member, and the Member hereby leases from the Cooperative," the particular dwelling unit identified, and prohibits subletting without the consent of the Cooperative.  The agreement also gives the member the right "to have and to hold said Dwelling Unit ***, renewable from year to year unless terminated under the terms of this agreement."

Additionally, under Article 11 of the Occupancy Agreement, which governs defaults by members, the Cooperative has the right to take any "suitable action or proceeding at law or in equity or by any other proceedings which may apply to the eviction of tenants or by force or otherwise, and to repossess the Dwelling Unit ***."  Article 11 further provides:

"The Member expressly agrees that there exists under this Occupancy Agreement a landlord-tenant relationship and that in the event of a breach or threatened breach by the Member of any covenant or provision of this agreement, there shall be available to the Cooperative such legal remedy or remedies as are available to a landlord for the breach or threatened breach under the law by a tenant or any provision of a lease or rental agreement."

While we recognize that defendants also have an ownership interest in the Cooperative by virtue of their shares in the corporate entity, as to the individual dwelling unit, only a leasehold interest exists.  We see no reason to treat the proprietary lease or occupancy agreement differently than other leases for purposes of the Act simply because it has been paired with an ownership interest in the corporation which holds title to the real estate.  We note also that the term "lease", as used in the Act, "includes every letting, whether by verbal or written agreement."  735 ILCS 5/9-214 (West 1996).  

Other jurisdictions which have considered the nature of the relationship between a cooperative and its members have found both the existence of a landlord-tenant relationship (see 
Earl W. Jimerson Housing Co., Inc. v. Butler
, 102 Misc.2d 423, 425 N.Y.S.2d 924 (N.Y. Sup. Ct. App. Term 1979)
), and the absence of such a relationship (see 
Kadera v. Consolidated Cooperative of Scottsdale East, Inc.
, 931 P.2d 1067 (Ariz. Ct. App. 1996); 
Plaza Road Cooperative, Inc. v. Finn
, 201 N.J. Super. 174, 492 A.2d 1072 (1985)
).  In other cases, the court has found controlling the express terms of the occupancy agreement as authority for the cooperative to terminate a member's rights for nonpayment of fees.  
Jordan v. Placer Holding Co.
, 213 Ga. App. 218, 444 S.E.2d 112 (1994).  

In those cases where no landlord-tenant relationship was recognized, the court focused on the proprietary rights of the member, which a mere tenant does not enjoy, to occupy a particular unit on a permanent and exclusive basis, and to have a voice in the management and operation of the building, as well as the selection of other members.  We are not persuaded, however, that the member's proprietary rights are necessarily paramount to the cooperative's interest in maintaining its viability.  The cooperative is dependent for its existence on the "rent" received from its members pursuant to the proprietary lease.  Thus, it makes sense that the cooperative should have access to the familiar and effective remedies available to a landlord against a delinquent tenant.  

Although defendants claim that the Cooperative should properly bring its suit against defendants in the chancery court, defendants do not identify the exact nature of such an equitable proceeding.  Even if the Cooperative could maintain an action in equity against defendants for non-payment of monthly carrying charges, this would not preclude the Cooperative's right to bring an action for forcible entry and detainer.

Defendants raise various other issues on appeal, none of which were raised below.  Accordingly, they are deemed waived for purposes of appellate review.  
LaSalle National Bank v. 53rd-Ellis Currency Exchange, Inc.
, 249 Ill. App. 3d 415, 437, 618 N.E.2d 1103 (1993).  

For the foregoing reasons, the judgment of the circuit court is affirmed.

AFFIRMED.

FOOTNOTES
1:
See 16 Illinois Jurisprudence, Property § 29:65, at 574 (1994) ("Termination of an individual's membership in a co-operative is not properly brought under the forcible entry and detainer statute as co-operatives are expressly excluded from the definition of common interest communities", citing 
Central Terrace
).  See also headnotes to 
Central Terrace
, 211 Ill. App. 3d at 130 ("cooperatives are excluded from forcible entry and detainer statute").