Dorothy Jean (Gruzella) CUNNINGHAM,
Appellant–Defendant,

v.

GEORGETOWN HOMES, INC.,
Appellee–Plaintiff.

No. 45A03–9802–CV–44.

Court of Appeals of Indiana.

April 9, 1999.

---

James E. Foster, Funk & Foster, Hammond, Indiana, Attorney for Appellant.

Frank J. Koprcina, Merrillville, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Dorothy Jean Cunningham (hereafter Cunningham), by this interlocutory appeal, challenges a decision of the trial court ordering pre-judgment possession of the property commonly known as 3827 Georgetown Court, Unit 48–D, Hammond, Indiana, to Georgetown Homes, Inc. (Georgetown) unless Cunningham posted a ten thousand dollar ($10,000.00) possessory bond.

On August 28, 1995, Cunningham paid $3,500.00 to become a member of Georgetown Homes, Inc., "a cooperative housing corporation," for the purpose of occupying Unit 48–D. Georgetown and Cunningham executed an Occupancy Agreement on September 1, 1995, at which time Cunningham's possession of the unit began. The two parties also executed a Subscription Agreement, wherein Cunningham agreed to pay a monthly "carrying charge" of approximately $385.00 as her portion of the common expenses of the cooperative. Record at 87, 101.

The Occupancy Agreement contains provisions which are not included in a typical residential lease but, rather, are indicative of an ownership interest in the unit. For instance, pursuant to the Occupancy Agreement, Cunningham was to pay a monthly maintenance charge, part of which included her share of the mortgage on the property, rather than a rental payment. Also, the Occupancy Agreement provides that if the unit is destroyed by fire, through no fault of Cunningham, and Georgetown chose not to rebuild the unit, then Georgetown would "redeem the membership of [Cunningham] and [ ] reimburse [her] for such loss as [s]he may have sustained." Record at 92. As well, the Occupancy Agreement states that Cunningham is responsible for maintaining the expenses of her own unit, including the decorating and repairs or maintenance needed.

In an effort to define the relationship of Georgetown to its members as one of a landlord to a tenant, Georgetown includes the following provisions in its Occupancy Agreements:

"The Member hereby expressly waives any and all right of redemption in case he shall be dispossessed by judgment or warrant of any court or judge; the words 'enter', 're-enter' and 're-entry', as used in this agreement, are not restricted to their technical legal meaning, and in the event of a breach or threatened breach by the Member of any of the covenants or provisions hereof, the Corporation shall have the right of injunction and the right to invoke any remedy allowed at law or in equity, as if re-entry, summary proceed-

ings, and other remedies were not herein provided for.

The Member expressly agrees that there exists under this Occupancy Agreement a landlord-tenant relationship and that in the event of a breach or a threatened breach by the Member of any covenant or provision of this agreement, there shall be available to the Corporation such legal remedy or remedies as are available to a landlord for the breach or threatened breach under the law by a tenant of any provision of a lease or rental agreement."

Record at 91(b).

Kristy Hutton, Cunningham's sister-in-law, testified that in January of 1997, she entered into a sub-lease with Cunningham, pursuant to which Hutton would pay $505.00 monthly to Cunningham to occupy Unit 48-D with her boyfriend and three children. Sub-leasing, without approval from the Board of Directors of Georgetown Homes, is prohibited by Georgetown. By letter dated March 4, 1997, Georgetown notified Cunningham that she was in violation of the Occupancy Agreement, which letter gave Cunningham ten days to cure the violation. Georgetown filed its Complaint for Ejectment, Damages and Termination of Occupancy Agreement on March 26, 1997.

The trial court heard evidence on the issue of prejudgment possession on three separate occasions, July 7, 1997, August 14, 1997, and October 22, 1997. On October 22, Georgetown filed a Motion to Set a Possessory Bond or Written Undertaking asking the court to require Cunningham to post a bond if she was to stay in possession of the unit. On December 17, 1997, without allowing Cunningham to contradict the evidence already presented by Georgetown,[1] the trial court ordered Cunningham to post a bond of $10,000.00, to be paid within ten days of that date, with immediate possession of the property going to Georgetown if Cunningham failed to post this bond.

Cunningham alleges several trial court errors, which we condense and restate as follows:

1) Did the trial court commit error by ordering possession of the unit to Georgetown, absent the foreclosure proceedings provided in Ind. Trial Rule 69(C) and I.C. 32-8-16-1, *et seq.*

2) Did the trial court commit error by failing to follow the statutory scheme set forth I.C. 32-6-1.5-1, *et. seq.*, in ordering pre-judgment possession of the unit to Georgetown.

### *Nature of the Parties' Relationship and Remedy for Breach of Occupancy Agreement*

Cooperative housing plans are sui generis: they are often referred to as "legal hybrids" because they contain elements of both property ownership and leasehold. In the typical cooperative housing situation, the member purchases stock in a non-profit cooperative association which owns or leases the real estate. The member will also execute a proprietary lease or occupancy agreement with the cooperative association, thereby acquiring the exclusive right to occupy a particular unit within the cooperative community. This occupancy agreement contains the rights of the members as well as rules and conditions of the community. Because each member of a cooperative pays a portion of the entire cost of maintaining the cooperative community, the whole community necessarily suffers when one member does not make her monthly payments. In order to determine the rights and remedies available to the parties for breach of an occupancy agreement, we first must determine the nature of the real estate relationship · which exists between Cunningham (the member) and Georgetown (the cooperative association). Georgetown claims that the parties have a landlord and tenant relationship, pursuant to the Occupancy Agreement and, thus, that Cunningham has no equity in the unit and foreclosure procedures are unnecessary. Cunningham argues that she does have an equity interest in her unit and, thus, possession of her unit

---

1. The trial court's order was issued prior even to the conclusion of Georgetown's presentation of evidence.

cannot be divested absent foreclosure proceedings.

No Indiana case has addressed the respective rights of the parties to a cooperative living situation, or what process a cooperative association must follow to dispossess a member of her unit. However, several other jurisdictions have addressed this issue and have come to differing conclusions. Some jurisdictions have found the relationship between a cooperative and its members to be that of landlord and tenant, to the extent that the cooperative may utilize summary procedures to remove a member from a unit. *See e.g., Quality Management Services, Inc. v. Banker* (1997) Ill.App., 291 Ill.App.3d 942, 226 Ill.Dec. 264, 685 N.E.2d 367;[2] *Earl W. Jimerson Housing Company, Inc. v. Butler* (1979) N.Y.App.Div., 102 Misc.2d 423, 425 N.Y.S.2d 924. Other jurisdictions have found that summary procedures are not adequate to protect the proprietary rights of the member, and, thus, the cooperative-member relationship is not a landlord-tenant relationship, in spite of what the parties label the relationship in the occupancy agreement. *See e.g., Kadera v. Consolidated Cooperative of Scottsdale East, Inc.* (1996) Ariz.Ct.App., 187 Ariz. 557, 931 P.2d 1067, *review denied; Plaza Road Cooperative, Inc. v. Finn* (1985) N.J.Super.Ct.App.Div., 201 N.J.Super. 174, 492 A.2d 1072. Finally, one jurisdiction has chosen to define the relationship based solely upon the express provisions of the Occupancy Agreement. *See Jordan v. Placer Holding Co.* (1994) Ga.Ct.App., 213 Ga.App. 218, 444 S.E.2d 112.

■ Absent direction from our General Assembly, we decline to attempt to fit Cunningham's interest vis-a-vis Georgetown into either a landlord-tenant category or a property ownership category; she is neither the owner of the real estate nor is she a tenant of Georgetown, Inc. Cunningham is an owner of personal property, stock in the cooperative corporation. However, the stock was purchased by Cunningham solely for the purpose of occupying unit 48–D. Thus, despite Georgetown's ownership of the real estate, we conclude that Cunningham does have a vested right with reference to the unit, which right she shall not be forced to forfeit merely upon a finding by a trial court, if one is made, that she breached the Occupancy Agreement.[3]

■ Nevertheless, while we do recognize Cunningham's interest in the unit to be more than that of a tenant's in her apartment, and that such interest is subject to protection, we also recognize that the unique and symbiotic nature of cooperative living requires that a cooperative association be able to remove breaching members from its community expediently. Accordingly, when a member joins a cooperative, and signs an occupancy agreement, which contains certain conditions, she obligates herself to those conditions.[4] Requiring Georgetown to statutorily foreclose upon Cunningham's interest would place upon it too great an onus. Also, the right of redemption, to which Cunningham would be entitled if Georgetown were required to foreclose upon her interest, would essentially render the conditions within the Occupancy Agreement unenforceable.

**2.** The *Banker* court reasoned: "We are not persuaded ... that the member's proprietary rights are necessarily paramount to the cooperative's interest in maintaining its viability. The cooperative is dependant for its existence on the 'rent' received from its members pursuant to the proprietary lease. Thus, it makes sense that the cooperative should have access to the familiar and effective remedies available to a landlord against a delinquent tenant." 226 Ill.Dec. 264, 685 N.E.2d at 370.

**3.** Georgetown contends that the Occupancy Agreement defines the parties' relationship as that of landlord and tenant, and, thus, Cunningham has no legal or equitable title to the real estate. However, we will not favor form over substance, and as discussed *supra*, the Occupan-cy Agreement contains several indicia which more closely resemble ownership than leasehold. As well, there is reference in the Occupancy Agreement to a transfer of membership interest. The fact that, absent the alleged breach, Cunningham could have transferred, for profit, her membership and her right to occupy unit 48–D, albeit with the approval of the board of directors, is an indication that Cunningham has a vested right with regard to that unit.

**4.** In exchange for obligating themselves to the rules of the community, members are given the opportunity to purchase, at a price *lower* than the price of purchasing real estate, equity with regard to a particular unit, which equity they are then able to sell.

■ Because we conclude that Cunningham is neither an owner nor a tenant of the real estate, we hold that neither statutory foreclosure nor forfeiture through eviction is an appropriate remedy to protect the interests of both parties. Rather, because the relationship is a legal hybrid, we think it appropriate that the remedy as well be of a hybrid nature. First, although it was not correctly utilized in this case, we find that ejectment, pursuant to I.C. 32–6–1.5–1, *et seq.* (Burns Code Ed. Repl.1995), is an appropriate remedy for removing a violating member from possession of a unit in a cooperative community. However, as well, we caution the trial court to remember that Cunningham does have a vested interest in relation to the unit, and she cannot be forced to simply forfeit that interest in the event that the court concludes in its final judgment that Cunningham did indeed breach the provisions of the Occupancy Agreement. Instead, the trial court may direct proceedings for the sale of Cunningham's interest which will insure that her rights are adequately protected.[5]

5. We do not today decide what remedy or remedies may be available or appropriate for a different type of association or community living arrangement. For example, in a horizontal property regime, the resident owns his unit in fee simple but is also a member of an association. The association is financially responsible for various services and obligations, such as maintenance of common areas, streets, snow removal, utilities, etc. The members of the association pay a fee, usually monthly, to defray the costs of such services. With such arrangements, the unit owner may be obligated upon a residential mortgage, which in the event of a delinquency could be foreclosed. Additionally, a deficiency or delinquency in the payment of the association's monthly fee could result in a monetary judgment lien which might be foreclosed. Furthermore, the articles or bylaws of the association might provide for sanctions against the unit owner, such as expulsion from the association and curtailment of the use of various services, such as utilities and the like.

This type of community living arrangement differs from a cooperative living arrangement, such as the one at issue in this case, in that with a horizontal property regime, member-owners are not dependent upon one another as they are in a cooperative living arrangement. Financing of individual units in a horizontal property regime is done by the individual owner, and thus, foreclosure upon one unit, does not endanger the property interest of any other member. On the other hand, the property of a cooperative is most

## Proper Application of the Ejectment Statute

■ The trial court, in its order dated December 17, 1997, ordered immediate possession of Unit 48–D to Georgetown unless Cunningham paid a $10,000.00 bond within ten days. Cunningham claims that the prejudgment possession proceedings were conducted "contrary to the statutory scheme found in I.C. 32–6–1.5–1, et seq." Appellant's Brief at 5. We agree. Pursuant to I.C. 32–6–1.5–2, the purpose of a pre-judgment possession hearing is to allow the defendant to controvert plaintiff's affidavit which states why plaintiff is entitled to possession of the property, "or to otherwise show cause why [s]he should not be taken from the property and plaintiff put in possession." In this case, only Georgetown was given any opportunity to present evidence before pre-judgment possession was granted, which process clearly contradicts the stated purpose of the hearing.[6]

Further, I.C. 32–6–1.5–6 states:

often financed as a whole, with the members' monthly fees going partially toward the mortgage on the property. Thus, when the property is foreclosed upon, every member is affected. Therefore, a process for the expedient ejectment of cooperative members, when they do not comply with the terms of the occupancy agreement, is crucial.

6. Georgetown argues that it was not necessary for Cunningham to present evidence because pursuant to I.C. 32–6–1.5–3 (Burns Code Ed. Repl.1995), the trial court is authorized to order pre-judgment possession without a hearing. Its reasoning is based upon the "fear that Cunningham would sell her unit 48–D to another individual after the Occupancy Agreement was terminated [which] was a realistic fear that would result in lost carrying charges, attorney fees and reimbursement of expenses and damages." Appellee's Brief at 14. However, the trial court is authorized to make such a ruling only if "probable cause appears that by reason of specific, competent evidence shown by testimony within the personal knowledge of an affiant or witness, the property is in immediate danger of destruction, serious harm, or of sale to an innocent purchaser, or that the holder of the property threatens to destroy, harm, or sell it to an innocent purchaser." I.C. 32–6–1.5–3. Georgetown has not made such a showing, in its complaint or with the evidence it has thus far provided to the court during the three hearings, so to obviate the

"An order of possession with or without notice, except final judgment, shall not issue in plaintiff's favor until plaintiff has filed with the court a written undertaking in an amount fixed by the court and executed by a surety to be approved by the court to the effect that they are bound to the defendant in an amount sufficient to assure the payment of such damages as the defendant may suffer if the property has been wrongfully taken from him."

A pre-judgment possession order should have been issued only upon Georgetown's filing of a bond with the court in an amount which would cover Cunningham's damages in the event that she was wrongfully ejected.

The order of the trial court is hereby vacated and the cause is remanded for proceedings not inconsistent with this opinion.

SHARPNACK, C.J., and BROOK, J., concur.

need for a full pre-judgment possession hearing. The mere fact that Cunningham has a saleable interest does not constitute probable cause of an immediate danger of a sale to an innocent purchaser. Thus, we find Georgetown's argument on this issue to be unpersuasive.