HARPER SQUARE HOUSING CORPORATION, Plaintiff-Appellee, v. ZAKRYSCHA HAYES, Defendant-Appellant.

First District (4th Division)   No. 1—97—4177

Opinion filed June 17, 1999.

Alfred S. Phelps, of South Holland, for appellant.

Herbert H. Fisher, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

Defendant Zakryscha Hayes, a member/occupant of a housing cooperative, appeals from the judgment of the circuit court awarding possession of her dwelling unit to plaintiff Harper Square Housing Corporation, a housing cooperative. We affirm the circuit court's judgment.

Plaintiff owns a housing cooperative located at 4859 South Lake Park, Chicago, Illinois (the cooperative). Defendant was a member of

the cooperative and resided in unit 808B. Defendant paid a monthly carrying charge to plaintiff in the amount of $581. A $25 late charge was assessed against members who paid their carrying charges after the tenth of the month.

On April 3, 1997, defendant tendered a cashiers' check in the amount of $1,162 to plaintiff to cover the carrying charges for March and April 1997. Defendant did not keep a copy of or receipt from the check. On May 6, 1997, Angela Leonard, plaintiff's bookkeeper, sent a letter to defendant informing her that plaintiff had misplaced the cashiers' check and that defendant should stop payment on the check and reissue a replacement check.

Ms. Leonard testified that defendant called her and confirmed receipt of the May 6, 1997, letter. Defendant told Ms. Leonard that she had spoken with her bank and that a stop payment could not be issued on the check without the check number. Defendant did not know the check number. Ms. Leonard testified that she asked defendant for the name of the bank at which the check was purchased; however, defendant did not provide this information. On May 13, 1997, Ms. Leonard sent a second notice to defendant again requesting the name of the bank, the date of purchase, and the exact amount of the check. According to Ms. Leonard, defendant never responded to this request.

Defendant testified that upon receipt of the May 6, 1997, letter, she called her bank and was told that it would take 30 days to trace the check. Defendant claimed to have informed Ms. Leonard of this information. The bank finally located the check on June 14, 1997, and defendant placed a stop payment on the check on that date. Defendant testified that she was told by the bank that it would take another 90 days or until September 14, 1997, for a check to be reissued or for the funds to be deposited in defendant's account. Defendant testified that she informed plaintiff of the 90-day delay.

Ms. Leonard testified that plaintiff's records showed that on May 21, 1997, defendant owed $1,818 in monthly charges and late fees for March, April, and May 1997. On that date defendant was served with a five-day notice which provided that if the sum of $1,818 was not paid within five days after service of the notice, defendant's right of occupancy would be terminated and defendant would be required to immediately deliver her membership certificate and occupancy agreement to the plaintiff and to vacate her unit. Defendant did not tender any amount of money to plaintiff within the five days subsequent to the May 21, 1997, notice.

Defendant testified that her bank account was frozen from the end of April 1997 until May 25, 1997, by a court order obtained by plaintiff in another matter. No copy of the court order was presented

at trial. Defendant testified that on May 30, 1997, once the freeze was lifted, she tendered $1,187 to plaintiff to cover the monthly charges for May and June 1997. Plaintiff returned this check on June 9, 1997, because it was not for the full amount due on the five-day notice.

On June 5, 1997, plaintiff filed this action pursuant to the Forcible Entry and Detainer Act (the Act) (735 ILCS 5/9—101 *et seq.* (West 1996)) seeking possession of unit 808B and past-due rent and damages in the amount of $2,399. A bench trial followed. During the bench trial, plaintiff voluntarily dismissed with prejudice its claim for past-due rent and money damages. On July 17, 1997, the trial court entered an order for possession in favor of plaintiff.

On August 13, 1997, defendant filed a timely motion to vacate the July 17, 1997, judgment which was denied on November 5, 1997. Defendant filed a timely notice of appeal on November 6, 1997, and a timely amended notice on November 20, 1997. On appeal defendant contends that: (1) the circuit court's judgment granting possession in favor of plaintiff was against the manifest weight of the evidence; and (2) the circuit court erred in denying defendant's motion to vacate the July 17, 1997, judgment.

■ The Act provides the sole means for settling a dispute over the possession of real property. *Russell v. Howe*, 293 Ill. App. 3d 293, 688 N.E.2d 375 (1997). Section 9—102(a) of the Act (735 ILCS 5/9—102(a) (West 1996)) sets forth eight circumstances under which an action for forcible entry and detainer may be maintained. Section 9—102(a) does not specifically refer to a housing cooperative situation as one of those circumstances; however, section 9—102(a)(4) makes the Act applicable to situations involving leaseholds providing that an action may be maintained:

> "When any lessee of the lands or tenements, or any person holding under such lessee, holds possession without right after the termination of the lease or tenancy by its own limitation, condition or terms, or by notice to quit or otherwise." 735 ILCS 5/9—102(a)(4) (West 1996).

Illinois courts have considered whether a housing cooperative situation should be viewed as a situation involving a leasehold. In *Sinnissippi Apartments, Inc. v. Hubbard*, 114 Ill. App. 3d 151, 448 N.E.2d 607 (1983), the court reviewed at length the nature of a cooperative and noted the similarities between cooperatives and leaseholds. In a typical cooperative situation, proprietary leases which contain provisions common to other leases are issued by the cooperative to member/occupants. The court noted:

> " 'It would seem clear that the lease in the usual cooperative apartment organization creates the relation of landlord and tenant

between the corporation and the shareholder-occupant. Of course, the purpose of the organization is to approach individual home ownership as nearly as possible in a situation where the only practical solution is common operation and management of many features, and the number of the occupant's shares are determined by the value of the apartment he occupies. But in legal theory the corporation is distinct from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation under the better-drawn plans, and it is necessary that this distinction be observed in order to carry out the purposes of the cooperative. The courts have recognized that the relation is that of landlord and tenant in allowing the corporation the usual remedies of a landlord against a tenant.' " 114 Ill. App. 3d at 156, quoting 1 American Law of Property § 3.10, at 199-200 (1952).

In *Quality Management Services, Inc. v. Banker*, 291 Ill. App. 3d 942, 685 N.E.2d 367 (1997), the first district found that a cooperative could bring an action under the Act for unpaid monthly carrying charges and possession. Relying on the above-quoted language from *Sinnissippi*, the court found that, in the usual situation, the relationship between a cooperative and its members is, in part, that of landlord and tenant. The court likened the occupancy agreement in the case to a proprietary lease and the monthly carrying charges paid by the defendant to rent. The court found "no reason to treat the proprietary lease or occupancy agreement differently than other leases for purposes of the Act simply because it has been paired with an ownership interest in the corporation which holds title to the real estate." *Quality Management Services, Inc.*, 291 Ill. App. 3d at 946. See also *Moss v. Elofsson*, 194 Ill. App. 3d 256, 550 N.E.2d 1228 (1990) (cooperative brings forcible entry and detainer action against member/occupant).

■ Defendant first contends that the trial court's judgment should have been vacated because the trial court lacked subject matter jurisdiction to hear this action. Defendant argues that the relationship between the parties was not that of a landlord and tenant and, therefore, the Act does not apply to the parties. It is of no consequence that this argument was first raised by defendant in her motion to vacate the trial court's July 17, 1997, judgment, as the lack of subject matter jurisdiction may be raised at any time. *In re Hatsuye T.*, 293 Ill. App. 3d 1046, 689 N.E.2d 248 (1997). Our review of a trial court's decision concluding that it does have subject matter jurisdiction is *de novo*. *City of Marseilles v. Radke*, 287 Ill. App. 3d 757, 679 N.E.2d 125 (1997).

■ As the party asserting error in the circuit court's exercise of jurisdiction in this case, it was incumbent upon defendant to direct this

court to evidence establishing that no landlord/tenant relationship existed between the parties. *Lorenz v. Siano*, 248 Ill. App. 3d 946, 618 N.E.2d 666 (1993). Defendant directs this court to two pieces of evidence that were not introduced at trial but were considered by the trial court at the hearing on defendant's motion to vacate: (1) the occupancy agreement entered into by the parties; and (2) the bylaws of the cooperative. Plaintiff argues that defendant was not entitled to bring this new evidence into the case after judgment without showing due diligence, the unavailability of the evidence at trial or that it was newly discovered. See *Rahill Corp. v. Urbanski*, 123 Ill. App. 3d 769, 463 N.E.2d 765 (1984). We disagree. The lack of subject matter jurisdiction is such a fundamental defect that it may be raised at any time and by any means. *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 676 N.E.2d 679 (1997).

In *City of Marseilles*, the defendant raised the lack of subject matter jurisdiction for the first time in a motion to vacate a consent judgment. The trial court refused to hear any of the parties' proffered evidence on the issue during the hearing on the motion to vacate. The appellate court held that "[a]s subject-matter jurisdiction can be raised at any time in the proceeding, the trial court should have conducted an evidentiary hearing on this issue, even in response to Radke's motion to vacate the consent judgment." *City of Marseilles*, 287 Ill. App. 3d at 763. We find that the trial court properly reviewed all of the evidence presented by the parties regarding subject matter jurisdiction, including the occupancy agreement and the bylaws.

Relying on *Central Terrace Co-Operative v. Martin*, 211 Ill. App. 3d 130, 569 N.E.2d 944 (1991), defendant argues that the occupancy agreement and bylaws in this case show that no landlord/tenant relationship was created between the parties. In *Central Terrace*, the second district held that a cooperative could not maintain a forcible entry and detainer action against one of its members because no landlord/tenant relationship existed. The court distinguished *Sinnissippi* on the basis that the situation in *Central Terrace* was not the "usual" cooperative arrangement. The member/occupant in *Central Terrace* executed a document entitled "Mutual Ownership Contract," which contained no language indicative of a lease. The mutual ownership contract provided that "perpetual use of each particular dwelling" would be delivered to the member in the form of a membership certificate. 211 Ill. App. 3d at 133. Moreover, the bylaws stated that the corporation was formed for the purpose of owning residential property on a cooperative basis, not leasing it. Finding that the cooperative had given possessory rights to its members based upon ownership interests not lease agreements, the court found no landlord/tenant relationship.

In *Quality Management Services*, the court held that in the usual cooperative situation the relationship between a cooperative and its members is, in part, that of a landlord and tenant. The court distinguished *Central Terrace* on the basis that *Central Terrace* did not involve the usual cooperative arrangement. In *Quality Management Services*, the member executed an occupancy agreement, not a "mutual ownership contract." The agreement provided that the member would have the right to occupancy under the terms and conditions of the agreement. The agreement specifically stated that the cooperative "hereby lets to the [m]ember" the particular unit. 291 Ill. App. 3d at 946. The agreement further gave the members the right to have and hold the unit, renewable year to year, unless terminated under the terms of the agreement. The agreement also expressly stated that the parties agreed that a landlord/tenant relationship existed under the occupancy agreement.

■ The occupancy agreement at issue in this case is very similar to that in *Quality Management Services*. Although the agreement in this case does not contain an express statement that a landlord/tenant relationship exists, the language used throughout the agreement shows that such a relationship was in fact created. The first paragraph of the agreement provides that the "cooperative hereby leases to the member" the specified unit. Unlike in *Central Terrace*, the occupancy agreement in the present case does not provide for a "perpetual use" of the unit by the member. Rather, as in *Quality Management Services*, the occupancy agreement at issue provides that a member may "have, hold, and enjoy" the unit for the term specified and subject to the terms of the agreement. The occupancy agreement refers to the specified "term" of the agreement several times. The agreement also discusses the member's "tenancy and occupancy" and provides that the cooperative may "re-let" the unit. The occupancy agreement expressly provides for the use of summary proceedings by the cooperative in the event of a breach or threatened breach by a member. This language is indicative of a lease.

Defendant points to the provision in the cooperative's bylaws which states that the "purpose of the corporation is to provide adequate, safe and sanitary housing accommodations exclusively for persons of low and moderate income on a cooperative as distinguished from a rental or condominium basis" as evidence that no landlord/tenant relationship was created. The court in *Central Terrace* held that the nature of the relationship between a cooperative and its members is to be determined by reviewing, in totality, the cooperative's documents. *Central Terrace*, 211 Ill. App. 3d at 133. See also *Sinnissippi Apartments, Inc.*, 114 Ill. App. 3d at 157. The bylaws establish

the relationship between the cooperative corporation and its member/ shareholders. The occupancy agreement establishes the occupancy relationship between the parties. When the two are considered together it is clear that a landlord/tenant relationship was created and, therefore, the trial court had subject matter jurisdiction to hear this case.

Defendant next contends that the circuit court's judgment was against the manifest weight of the evidence. Specifically, defendant contends that plaintiff failed to establish that a landlord/tenant relationship existed between the parties, that defendant owed plaintiff any rent, or that any procedure existed under the Act whereby a cooperative could obtain possession and past-due carrying charges from a member.

■ We reject defendant's argument that there was no evidence at trial of a landlord/tenant relationship between the parties. The uncontradicted evidence before the trial court was that defendant occupied an apartment owned by plaintiff and that defendant paid consideration to plaintiff for that occupancy. Upon these facts the trial court could conclude that there was a landlord/tenant relationship. There was no evidence indicating that this was anything other than a usual cooperative situation which created a landlord/tenant relationship.

■ We further reject defendant's argument that there is no procedure under the Act that provides for a cooperative to obtain possession and carrying charges from a member/owner. After the decision in *Quality Management Services*, it is clear that in a usual cooperative situation the relationship between the cooperative and its members is that of a landlord and tenant. The existence of such a relationship brings cooperatives within the purview of section 9—102(a)(4) of the Act (735 ILCS 5/9—102(a)(4) (West 1996)), giving cooperatives access to the remedies available to a landlord against a delinquent tenant. Section 9—209 of the Act provides in pertinent part:

> "A landlord *** may, any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated. If the tenant does not within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer *** without further notice or demand." 735 ILCS 5/9—209 (West 1996).

Defendant argues that section 9—209 is not available to plaintiff because there is no default in the payment of rent by defendant, nor could there be one because defendant never agreed to pay rent to

plaintiff. Rather, she agreed to pay monthly carrying charges. Defendant maintains that section 9—209 does not provide a procedure by which plaintiff may demand past-due carrying charges.

Defendant's argument is simply one of semantics. This same argument was addressed by the court in *Quality Management Services*, where the court noted that a cooperative is dependent for its existence on the "rent" or carrying charges received from its members pursuant to the "proprietary lease" or occupancy agreement. The court found that when a member of a cooperative is delinquent in the payment of its carrying charges, the cooperative should have access to the same remedies available to a landlord against a delinquent tenant. This would include the remedies available in section 9—209.

■ The evidence in the case at bar established that defendant paid consideration for the use of plaintiff's property, *i.e.*, rent, representing defendant's proportionate share of the operating expenses for the building. The evidence also established that defendant was past-due in her rent. Ms. Leonard testified that plaintiff's records showed that on May 21, 1997, defendant owed $1,818 in past-due monthly charges and late fees. Defendant argued that this amount incorrectly included the rent for March and April which defendant had paid by way of a cashiers' check which plaintiff then lost. Be that as it may, it was undisputed that defendant was delinquent in her May rent.

Mr. Sterling testified that on May 21, 1997, he served defendant with a five-day notice demanding payment of the past-due rent. Defendant suggested that she was unable to pay any amount to plaintiff because her bank account had been frozen by court order in a separate action. Defendant made payment to plaintiff as soon as the freeze was lifted from her account. As the trial judge correctly noted, there was no evidence as to what, if any, account was frozen and no court order imposing a freeze was introduced into evidence. The uncontroverted evidence showed that defendant did not make any payment to plaintiff within the five days following service of the notice. Therefore, pursuant to section 9—209, plaintiff could treat the lease as terminated and seek possession under section 9—102 of the Act.

We reject defendant's argument that the trial court improperly shifted the burden of proof to defendant. Defendant correctly maintains that in a forcible entry and detainer action the plaintiff has the burden to prove his or her right to possession. See *Eckel v. MacNeal*, 256 Ill. App. 3d 292, 628 N.E.2d 741 (1993). We find that the above evidence presented by plaintiff at trial was sufficient to meet this burden.

A trial court's judgment will not be overturned unless it is against the manifest weight of the evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207,

647 N.E.2d 273 (1995). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Bazydlo*, 164 Ill. 2d at 215. Based upon the evidence introduced at trial, we cannot say that the circuit court's judgment granting possession to plaintiff was against the manifest weight of the evidence.

■ Defendant further contends that the trial court erred in failing to apply the Chicago Residential Landlord Tenant Ordinance. However, section 5—12—020(f) of the ordinance expressly excludes from its coverage "[a] dwelling unit in a cooperative occupied by a holder of a proprietary lease." Chicago Municipal Code § 5—12—020(f) (amended November 6, 1991). Therefore, defendant's arguments regarding the ordinance are without merit.

■ Defendant raises various other issues on appeal, none of which were raised below. Consequently, they are deemed waived for purposes of appellate review. *Quality Management Services, Inc.*, 291 Ill. App. 3d at 947; *La Salle National Bank v. 53rd-Ellis Currency Exchange, Inc.*, 249 Ill. App. 3d 415, 618 N.E.2d 1103 (1993).

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.