NOTICE
Decision filed 10/26/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220658-U

NO. 5-22-0658

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| JEFFREY S. VOGELPOHL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 21-CH-204 |
| | ) | |
| GREGORY HACKER, | ) | Honorable |
| | ) | A. Ryan Jumper, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the plaintiff, Jeffrey S. Vogelpohl, was not required to exhaust state administrative remedies before bringing his United States and Illinois constitutional claims, the trial court did not lack subject matter jurisdiction and the trial court's dismissal of the complaint with prejudice was improper. We reverse and remand for further proceedings.

¶ 2    The plaintiff, Jeffrey S. Vogelpohl (Vogelpohl), appeals from the trial court's dismissal of his complaint for lack of subject matter jurisdiction. Vogelpohl sued the Captain Bureau Chief of the Firearms Services Bureau, Gregory Hacker, in his official capacity, seeking injunctive relief from the revocation of his firearm owners identification (FOID) card. The trial court dismissed Vogelpohl's complaint with prejudice on the basis that the court lacked subject matter jurisdiction. We reverse and remand.

1

¶ 3                                    I. Background

¶ 4     The core issue on appeal in this case is whether Vogelpohl was required to exhaust his

Illinois administrative remedies before he could file this suit in chancery court. We include only

the relevant facts to the narrow issue before this court on appeal.

¶ 5     In his amended complaint, Vogelpohl alleged that in 2021 he applied for and received a

FOID card. In October 2021, Vogelpohl unsuccessfully attempted to complete a transfer of two

firearms from a licensed firearm dealer. The transaction was disapproved because his FOID card

had been revoked due to an alleged felony cannabis possession conviction in 1980. He was

officially notified of the FOID card revocation one week later.

¶ 6     In August 1980, the State charged Vogelpohl with possession of more than 500 grams of a

substance containing cannabis in Pike County, Illinois. In September 1980, Vogelpohl entered a

guilty plea for which he was sentenced to two years of probation. Vogelpohl was successfully

discharged from probation in September 1982. The probation to which Vogelpohl was sentenced

qualified as a "second chance" form of probation pursuant to section 10 of the Cannabis Control

Act (720 ILCS 550/10 (West 2020)). The candidates for this type of probation are first-time felony

offenders. *Id.* § 10(a). Upon fulfillment of the term of probation, the court must discharge the

person and dismiss the proceedings against him. *Id.* § 10(f). "[D]ischarge and dismissal under this

Section is not a conviction for purposes of disqualification or disabilities imposed by law upon

conviction of a crime ***." *Id.* § 10(g).

¶ 7     Vogelpohl specifically alleged that he had a constitutional right to keep and bear arms

pursuant to the second amendment of the United States Constitution applicable to the states

pursuant to the fourteenth amendment. U.S. Const., amends. II, XIV.

2

¶ 8    The State asked the trial court to dismiss Vogelpohl's first amended complaint because he only sought relief pursuant to the United States and Illinois Constitutions, and not under the Illinois Firearm Owners Identification Act (FOID Act). Although Vogelpohl framed his claims in constitutional terms, the State argued that the FOID Act was the appropriate vehicle for Vogelpohl's relief as what he ultimately sought was the return of his FOID card. Pursuant to the FOID Act, the State argued that his claim or appeal should not have been filed in state court but should have been filed directly with the Illinois State Police Director. Thus, the State contended that Vogelpohl must exhaust administrative remedies before he seeks constitutional relief.

¶ 9    The trial court agreed with the State's analysis and dismissed Vogelpohl's complaint on the basis that he had yet to exhaust administrative remedies, and thus, the court lacked subject matter jurisdiction to reach the constitutional claims. Vogelpohl timely appealed this order.

¶ 10                                    II. Analysis

¶ 11    We review the question of the trial court's subject matter jurisdiction on a *de novo* basis. *Miller v. Department of State Police*, 2014 IL App (5th) 130144, ¶ 8; *Harper Square Housing Corp. v. Hayes*, 305 Ill. App. 3d 955, 959 (1999).

¶ 12    The Illinois State Police maintains the authority to revoke a previously issued FOID card if it determines that the person to whom the card was issued no longer meets the eligibility criteria or did not meet the eligibility criteria when the card was issued. 430 ILCS 65/8(c) (West 2020). In Illinois, a party may not seek judicial review of a FOID card revocation if administrative remedies are available. *Sedlock v. Board of Trustees of the Police Pension Fund of the City of Ottawa*, 367 Ill. App. 3d 526, 527-28 (2006). Stated another way, administrative remedies must be exhausted before a party may seek judicial review. *Id.* The exhaustion doctrine allows full development of the facts before the administrative agency which has expertise on the subject matter.

3

¶ 13    The version of section 10(a) of the FOID Act in effect at the time the defendant's FOID card was revoked plainly set forth two procedural paths for challenging the denial or revocation of a FOID card. 430 ILCS 65/10(a) (West 2020). The first path required the rejected or revoked applicant to appeal within the agency to the Director of the Illinois State Police. *Id.* However, if the revocation was based upon specific crimes, including violations of the Illinois Cannabis Control Act classified as a Class 2 felony or greater, then "the aggrieved party may petition the circuit court in writing in the county of his or her residence for a hearing." *Id.*

¶ 14    While we understand the foundation of the trial court's order concluding that Vogelpohl must first exhaust his administrative remedies, we conclude that the trial court's order was in error. Having reviewed Vogelpohl's amended complaint, there is no question that his claim factually began with his state efforts to administratively obtain his FOID card. However, after his FOID card was revoked, Vogelpohl legally raised constitutional claims, stating: "At all times relevant, Plaintiff has a constitutional right to keep and bear arms, including handguns, at least, in his private home, for private self defense, under the Second Amendment, said Amendment being incorporated against the states under the 14th Amendment." As Vogelpohl correctly stated, the government "bears the burden of establishing that laws that infringe on Second Amendment rights are constitutional."

¶ 15    The United States Supreme Court has held that an individual need not exhaust state administrative remedies before seeking relief pursuant to the Civil Rights Act. *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 501-12 (1982) (citing 42 U.S.C. § 1983 (1976 ed., Supp. IV)). The Supreme Court found that the United States government was established "as a guarantor of the basic federal rights of individuals against incursions by state power." *Id.* at 503. The Court quoted its own decision in *Mitchum v. Foster* stating that the purpose of § 1983 of the

4

Civil Rights Act was "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' " *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1880)). The Supreme Court also found that congressional intent provided strong evidence that exhaustion of state administrative remedies is not a prerequisite to a civil rights action. *Patsy*, 457 U.S. at 507-12.

¶ 16    In accordance with United States Supreme Court precedent, we conclude that given the structure of Vogelpohl's constitutional claims, he was not required to exhaust administrative remedies—to the extent that any existed in this case—before raising his constitutional claims in court.

¶ 17                                     III. Conclusion

¶ 18    For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed and the cause is remanded.


¶ 19    Reversed and remanded.